IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RON BROWN, | |
| Plaintiff, | |
| v. | No. 20-cv-4193 |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | Judge Franklin U. Valderrama |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ron Brown (Brown) has sued Defendants Thomas Dart, the Sheriff of Cook County (Dart), in both his individual and official capacities, and Cook County, Illinois (Cook County) (collectively, Defendants), asserting 42 U.S.C. § 1983 claims based on injuries he sustained while he was a pretrial detainee at Cook County Jail during the coronavirus pandemic. R. 1, Compl.[1] Specifically, Brown appears to allege two distinct claims—first, he asserts that he was subjected to unconstitutional conditions of confinement due to Defendants' inadequate response to the spread of the coronavirus[2] at the Cook County Jail, and second, he alleges that after he grew ill and was transferred to a hospital, correctional officers used excessive restraint to shackle him to the hospital bed. Compl. ¶¶ 24–25. Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 10, Mot.

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2] COVID-19 is a novel coronavirus that has affected nearly every aspect of everyday life.

Dismiss. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## Background

Brown is a 72-year-old pretrial detainee at Cook County Jail who has chronic medical conditions stemming from a stroke he suffered several years ago, including substantial limitations on his mobility. Compl. ¶¶ 2, 5.[3] From September 12, 2019 to March 24, 2020, Brown was housed in Cook County Jail Tier 3C, a dormitory that holds approximately 38 inmates in the Residential Treatment Unit (RTU). *Id.* ¶ 6. Tier 3C is a congregate housing setting with a large number of inmates living in close-quarters; inmates share showers, bathrooms, and a dayroom. *Id.* ¶ 9.

Brown alleges that since January 2020, Defendants knew that the novel coronavirus posed a significant risk to the health and well-being of inmates at Cook County Jail. Compl. ¶ 8. Despite this knowledge, Defendants failed to take reasonable measures to protect "medically fragile inmates," like Brown, from contracting the coronavirus. *Id.* ¶ 10. Specifically, Defendants failed to distribute facemasks and failed to provide readily available disinfectants or alcohol-based hand sanitizers to the pretrial detainees. *Id.* ¶ 11. Moreover, the Cook County Jail staff did not regularly sanitize common areas, such as showers, bathrooms, and eating areas in Tier 3C to prevent the spread of coronavirus. *Id.*

By March 2020, several inmates assigned to Tier 3C exhibited symptoms of coronavirus. Compl. ¶ 13. In a grievance letter dated March 20, 2020, Brown

---

[3]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Brown. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

complained to the Cook County Jail staff about the dangerous conditions of confinement and the inability to maintain a safe distance from the ill inmates. *Id.* ("All of the air vents on 3C has a lot of dust . . . They need to be cleaned A.S.A.P. With this coronavirus going on we need fresh air. . . . Also[,] no cleaning stuff is being sent to keep these showers . . . clean.").

By March 24, 2020, Brown became ill, registering a temperature of approximately 102 degrees, and after an evaluation by a doctor at Cermak Urgent Care Clinic, Brown was transferred to St. Anthony Hospital for treatment. Compl. ¶ 16. While at St. Anthony Hospital, Brown was treated for the coronavirus and related symptoms, including extreme weakness, difficulty breathing, and significant pain. *Id.* ¶ 17.

Brown further alleges that at that time, Dart instructed correctional officers to shackle by hand and foot all seriously ill inmates being treated at local hospitals. Compl. ¶ 18. Pursuant to this widespread practice, Brown was shackled to his hospital bed while being treated at St. Anthony hospital. *Id.* ¶¶ 20, 23. Brown claims that the constant restraint of his hand and foot caused him severe pain and significantly limited his ability to position himself on his stomach, which, according to his doctors, would have assisted with breaching and reduced stress on his already strained lungs. *Id.* ¶ 23. On April 17, 2020, Brown was released from St. Anthony Hospital and returned to Cook County Jail. *Id.* ¶ 22.

Following these events, Brown filed suit against Defendants, asserting Section 1983 claims. Compl. Defendants move to dismiss the Complaint under Rule 12(b)(6). Mot. Dismiss.

## Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Section 1983 provides that a person may not be deprived of any constitutional right by an individual acting under color of state law. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). To state a Section 1983 claim, a plaintiff must show that they were "deprived of a right secured by the Constitution or federal law, by a person

4

acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

While not a model of clarity, the Complaint apparently alleges two distinct claims—(i) one unconstitutional conditions of confinement claim against Dart (in his official capacity only[4]) and Cook County and (ii) one unconstitutional excessive restraint claim against Dart (in both his official and individual capacities) and Cook County (as an indispensable party only).[5] *See* Compl. ¶ 25 ("Defendants Dart and Cook County . . . violated plaintiff's rights because the conditions of confinement

---

[4]Though not readily apparent from the Complaint, Brown clarified in his response brief that "Plaintiff does not seek to impose individual liability against Dart for the conditions of confinement at Cook County Jail that caused plaintiff to contract coronavirus." *See* R. 20, Resp. at 14 n.5.

[5]The Complaint includes some seemingly contradictory allegations regarding Cook County's role as a defendant. The Complaint first alleges that "Defendant Cook County shares responsibility with Defendant Dart for providing medical care for inmates remanded to the Sheriff's custody and is also joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003)," suggesting that Cook County is only added to the suit as an indispensable party under *Carver* (explaining that federal law deems the applicable Illinois county a necessary party in any suit seeking damages from an independently elected county officer, like the sheriff, in an official capacity). Compl. ¶ 4. Later allegations in the Complaint relating to the conditions of confinement claim, however, assert that *both* Dart and Cook County have responsibility for providing adequate conditions of confinement for medically ill inmates at Cook County Jail and violated Plaintiffs rights by failing to take reasonable measures to protect medically fragile inmates like Brown. *See id.* ¶¶ 8–12, 14–15, 25. On the other hand, as to the excessive restraint claim, Brown alleges that "*Dart*'s widespread restraint practice, applied to plaintiff, was excessive, caused gratuitous pain, and violated plaintiff's rights under the Fourteenth Amendment to the United States Constitution." *See id.* ¶ 24 (emphasis added). Taking the Complaint's allegations together as a whole and drawing all reasonable inferences from those allegations, the Court construes the Complaint to be (i) asserting the conditions of confinement claim against Cook County under *Monell v. Department of Social Serv.*, 436 U.S. 658, 690–91 (1978) and (ii) bringing Cook County in as an indispensable defendant only to the excessive restraint claim under *Carver*. The Court finds that the Complaint adequately puts Defendants on notice of these claims. *See Sanders v. JGWPT Holdings, Inc.*, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016) (collecting cases and finding that Rule 8 requires only that the plaintiff provide "enough detail about the nature of the allegations to put each defendant on fair notice of the claims") (internal citation omitted).

posed an unreasonable risk to his health."); *id.* ¶ 24 ("Dart's widespread restraint practice, applied to plaintiff, was excessive, caused gratuitous pain, and violated plaintiff's rights under the Fourteenth Amendment to the United States Constitution."); *see also* Resp. at 8 n.3 ("The complaint along with the elaborations in this response show that the Sheriff and the County have joint responsibility for providing adequate conditions of confinement for medically ill inmates at Cook County Jail"); *id.* at 12–14 (arguing that Brown has adequately alleged a shackling claim against Dart in his official and individual capacities, without mention of Cook County). The Court addresses the sufficiency of each claim's allegations, as against each Defendant, in turn.

## I. Conditions of Confinement Claim

Brown claims that Defendants violated his constitutional rights by inadequately responding to the coronavirus outbreak at Cook County Jail and knowingly subjecting him to conditions of confinement that posed an unreasonable risk to his health. Compl. ¶ 25. "'Pretrial detainees may assert a conditions-of-confinement claim under the Fourteenth Amendment's Due Process Clause' if subjected to 'adverse conditions that deny the minimal civilized measure of life's necessities.'" *Johnson v. Foster*, 2020 WL 5891405, at *2 (N.D. Ill. Oct. 5, 2020) (quoting *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019)). To state a conditions of confinement claim, the pretrial detainee must allege that: (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly as to the conditions of the detainee's confinement"; and (2) the defendant's conduct was

6

objectively unreasonable. *Johnson*, 2020 WL 5891405 at *2 (citing *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018)). An official's response to a particular condition may be reasonable even if the response fails to avert the harm. *See Cullom v. Dart, et al.*, 2020 WL 7698366, at *2 (internal citations omitted). "And the reasonableness of the defendant's conduct must be evaluated based upon the totality of the circumstances and with appropriate deference to jail administrators' evaluation of safety and security concerns." *Id.*

Defendants do not dispute that Brown sufficiently pled the claim's first element—knowing conduct. *See generally* Mot. Dismiss. Indeed, Brown alleges that Defendants "knew of the serious risk of harm caused by the coronavirus"; "knew [that] the implementation and enforcement of social distancing, surgical mask use, increased access to soap and alcohol-based hand sanitizer, and enhanced cleaning and disinfectant practices likely reduced the spread of the virus"; and failed to take reasonable steps to curb the spread of coronavirus. Compl. ¶¶ 12, 25.

The element at issue, then, is whether Defendants' response to the outbreak was "objectively unreasonable." *Johnson*, 2020 WL 5891405 at *2. Defendants insist that their actions were objectively reasonable and that they took "unprecedented measures" to respond to a global pandemic that had "no vaccine or solution." Mot. Dismiss at 4; R. 21, Reply at 6. In support, Defendants point to the district court's findings in *Mays v. Dart*, 456 F. Supp. 3d 966, 1002 (N.D. Ill. 2020), which concerned a request for a preliminary injunction involving coronavirus prevention measures at Cook County Jail, and the findings in the subsequent Seventh Circuit opinion, *Mays*

*v. Dart*, 974 F.3d 810 (7th Cir. 2020). *See* Mot. Dismiss at 5–7; Reply at 5. In granting the preliminary injunction, the district court explained that it could not "reasonably be disputed that the Sheriff has undertaken a significant, and impressive, effort to safeguard detained persons in his custody from infection by coronavirus. And . . . the Court [was] satisfied that the Sheriff and his staff [had] acted in *good faith*, with the goal of protecting the people placed in his custody, consistent with his obligation to maintain security." *Mays*, 456 F. Supp. 3d at 1002 (emphasis added). And on appeal, in remanding certain aspects of the injunctive relief, the Seventh Circuit specifically noted that Dart "took numerous protective measures to prevent the spread of COVID-19," including "increasing disinfection and sanitization, devising protocols to screen detainees for symptoms, and moving infected detainees to separate housing." *Mays*, 974 F.3d at 815.

Defendants appear to request that the Court take judicial notice of the *Mays* commentary and to find that Dart's demonstrated "good faith" and "impressive" efforts foreclose Brown's claim here. *See* Mot. Dismiss at 5–7; Reply at 5–6. The Court, like several other courts in this District analyzing nearly identical claims, rejects Defendants' position regarding *Mays*. *See Wilson v. Dart*, 2021 WL 2549401, at *2 (N.D. Ill. June 22, 2021) (rejecting Dart's reliance on the Seventh Circuit's findings in *Mays*); *Cullom*, 2020 WL 7698366, at *2 (same); *Gama v. Dart*, 2020 WL 6802030, at *3 (N.D. Ill. Nov. 19, 2020) (rejecting Dart's reliance on the district court's findings in *Mays*). As Brown points out, the Federal Rules of Evidence permit a court to take judicial notice of a fact only if it is "not subject to reasonable dispute because it is

8

generally known" or "can be accurately determined from sources whose accuracy cannot reasonably be questioned." *United States v. De La Torre*, 940 F.3d 938, 952 (7th Cir. 2019) (quoting Fed. R. Evid. 201(b)); *see also* Resp. at 6 (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)). The *Mays* cases neither indisputably nor "definitively establish" that Defendants' response to the coronavirus was objectively reasonable. *Wilson*, 2021 WL 2549401, at *2. The district court in *Mays* was ruling only on a request for a preliminary injunction, which by definition, is "not a decision on the merits of the plaintiff's suit." *Cullom*, 2020 WL 7698366, at *2. And the Seventh Circuit specifically emphasized that it was "not address[ing] the merits of whether Plaintiffs [had] demonstrated that they [had] suffered a constitutional violation" and instead was only considering whether any errors were made in the granting of the preliminary injunction. *Mays*, 974 F.3d at 815. The Court does not take judicial notice of or otherwise rely on the *Mays* commentary.

Aside from *Mays*, Defendants also summarily contend that they took a "more aggressive approach to COVID-19 prevention and remediation than many local, state, national, and international governments, businesses, and nongovernmental organizations" and were "taking measures that went above and beyond CDC guidelines." Mot. Dismiss at 9. But, any counter-facts or affirmative defenses pose questions for a later stage. On a motion to dismiss, the Court must evaluate the allegations in the *Complaint*, and draw all inferences in Brown's favor without considering any additional facts proffered by Defendants. *See Wilson*, 2021 WL

9

2549401, at *3; *Cullom*, 2020 WL 7698366, at *2. The Court finds that Brown has sufficiently alleged that Defendants acted objectively unreasonably in failing to distribute facemasks, disinfectants, or alcohol-based hand sanitizer; failing to regularly sanitize the showers, bathrooms, and eating areas; failing to implement social distancing; and failing to administer a testing program for inmates. *See* Compl. ¶¶ 9, 11, 14–15. As such, the Court finds that Brown has sufficiently stated a claim for unconstitutional conditions of confinement.

As for pleading defendant liability, the Court has construed the conditions of confinement claim to be brought against both Dart in his official capacity and Cook County (and, as noted above, the Court has found that Defendants had sufficient notice of this claim as it pertains to each defendant). *See Gama*, 2020 WL 6802030, at *1(evaluating nearly identical conditions of confinement claim as against both defendants—Dart and Cook County). Claims against Dart in his official capacity and Cook County arise under *Monell*, 436 U.S. at 690–91. Defendants do not address the specific *Monell* liability requirements (allegations that the injury was caused by a widespread policy or practice) in their briefing, but regardless, the Court finds that Brown's allegations generally concern widespread policies and practices regarding sanitation, hygiene, the availability of personal protective equipment, and social distancing at Cook County Jail. *See* Compl. ¶¶ 11–12, 15. The Court further finds that Brown alleges these policies and practices caused him to contract coronavirus. *Id.* ¶¶ 17, 25; *see also Wilson*, 2021 WL 2549401, at *2 (finding that nearly identical allegations had adequately stated a *Monell* claim against Dart).

10

Having determined that Brown has sufficiently alleged a conditions of confinement claim and satisfied the *Monell* threshold, the Court denies Defendants' motion to dismiss as to the conditions of confinement claim and permits the claim to proceed as against Dart in his official capacity and Cook County.

## II.    Shackling Claim

Brown also alleges that he was subjected to unconstitutional excessive restraint when he was shackled to his hospital bed pursuant to "Dart's widespread restraint practice" and brings a shackling claim against Dart in both his official and individual capacities. Compl. ¶¶ 21, 23. "The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that serves to punish a pre-trial detainee." *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000) (internal citations omitted). "The use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear *excessive* in relation to the purpose they allegedly serve." *Id.* (emphasis added).

Defendants contend that the Court should dismiss the excessive restraint claim because there is nothing inherently unconstitutional about restraining detainees in unsecure hospital facilities, as shackling "serves the legitimate penological goal of preventing inmates awaiting trial from escaping . . . less secure confines, and is not excessive in that goal." Mot. Dismiss at 10 (quoting *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997)). Moreover, Defendants insist that

11

handcuffing a detainee without preventing him from receiving medical care and without causing any apparent injury is not excessive. Mot. Dismiss at 11.

In response, Brown concedes that preventing detainee escape is a legitimate non-punitive government purpose for the shackling policy. Resp. at 9–10 ("Defendants are correct that there is a legitimate non-punitive government purpose for the shackling policy. . . . And shackling detainees while they are on hospital visits furthers that purpose.") (internal citations omitted). However, Brown correctly insists that even when shackling may serve a rationally related non-punitive purpose, shackling can still violate substantive due process if it is executed in an excessive manner. *Id.* Brown maintains that courts in this District have found that the continuous restraint of a hospitalized detainee states a viable claim under the Fourteenth Amendment. *Id.* at 10 (citing *May*, 226 F.3d at 884; *Thurman v. Unknown Cook Cty. Sheriff Emps.*, 2018 WL 5315208, at *6 (N.D. Ill. 2018); *Harper v. Dart*, 2015 WL 6407577, at *3 (N.D. Ill. 2015); *Moore v. Dart*, 2014 WL 7205575, at *4 (N.D. Ill. 2014); *Flores v. Sheriff of Cook Cty.*, 2014 WL 1031494, at *5 (N.D. Ill. 2014)). Brown specifically highlights *May*, in which the Seventh Circuit found that shackling an AIDS patient to a hospital bed around the clock while under constant watch of a guard was "plainly excessive in the absence of any indication that the detainee pose[d] some sort of security risk." 226 F.3d at 884.

In reply, Defendants attempt to distinguish *May*. Mot. Dismiss at 10. Defendants maintain that in *May*, the 24-hour shackling prevented the plaintiff from receiving visitors, meeting with his lawyers, and generally participating in the legal

12

process, in addition to causing the plaintiff physical and emotional pain. *Id.* (citing *May*, 226 F.3d at 878). Defendants insist that Brown alleges no similar facts here. The Court finds that Defendants misconstrue the relevant holding in *May*. The Seventh Circuit affirmed the district court's denial of the motion to dismiss as to the *substantive due process claim*, explaining that "it [was] hard to see how shackling an AIDS patient to his or her bed around the clock, despite the continuous presence of a guard, [was] an appropriate policy for carrying out [a non-punitive government] purpose." *May*, 226 F.3d at 884. Factual allegations involving meeting with lawyers and visitors related to May's equal protection and access to the courts claims, irrelevant for evaluating a shackling claim. *Id.* at 882–83. Moreover, Brown *did* allege a physical injury here. Compl. ¶ 23. The Court disagrees with Defendants and finds that *May* sets guideposts for deeming a specific shackling "excessive." 226 F.3d at 884.

Here, Brown has alleged that while at the hospital, he was being "treated for the coronavirus and related symptoms including extreme weakness, difficulty breathing, and significant pain." Compl. ¶ 17. Brown further alleges that "the continuous restraint of plaintiff's hand and foot caused significant pain. The restraint also significantly limited the plaintiff's ability to position himself on his stomach, pursuant to advice from the medical staff, to assist with breathing and reduce stress on his strained lungs." *Id.* ¶ 23. Importantly, and as Defendants point out, Plaintiff does not specifically allege that he was "shackled to his bed 24 hours-a-day or that an armed guard was present 24 hours-a-day," which was a crucial non-security risk

13

finding in *May*.⁶ Reply at 4; *May*, 226 F.3d at 884. But, the allegations that Brown was suffering from coronavirus, was having difficulty breathing, and had previous chronic medical conditions that limited his mobility are sufficient to infer that he was not a security risk and did not require shackling at that time. *See Gama*, 2020 WL 6802030, at *4 ("The elaboration that he had difficulty breathing and that he was very weak is consistent, however, with his allegation that he had coronavirus, and that allegation is sufficient to infer that he was not a security risk and did not require shackling."). Based on (i) Brown's allegations that the "continuous" shackling caused Brown significant pain and prevented him from positioning himself on his stomach against his doctor's recommendation and (ii) the reasonable inference that Brown did not pose a security risk, the Court finds that Brown has sufficiently pled an excessive restraint claim as it relates to his shackling at the hospital.

Finally, regarding pleading defendant liability, Brown brings his shackling claim against Dart in both his official and individual capacities. Again, Defendants do not appear to challenge the official capacity claim, but regardless, the Court finds that Brown has adequately alleged that the shackling was executed, and the violation of his constitutional rights was caused, pursuant to a common policy or widespread practice implemented by the Sheriff's Office. *See* Compl. ¶ 18–19 ("The Sheriff

---

⁶In his response brief, Brown attempts to "elaborate" on his allegations and adds that "the plaintiff was under the constant monitoring by at least two armed correctional officers." Resp. at 5. Though a plaintiff is permitted to add factual allegations in responding to a motion to dismiss, any new allegations must be consistent with the facts already alleged in the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The Court finds that the response brief's allegation that "two armed correctional officers" were "assigned to directly watch plaintiff in his hospital room" is an entirely new fact, not consistent with any facts alleged in the Complaint. Therefore, the Court does not consider it.

14

instructs correctional officers to shackle by hand and foot all seriously ill inmates hospitalized at Stroger and other outlying hospitals. . . . Consistent with Dart's instruction, correctional officers assigned to guard inmates at outlying hospitals engage in a widespread practice of shackling inmates to the bed."). This is sufficient to support an official capacity (*Monell*) claim against Dart.

However, the Court finds that Brown has not adequately alleged an individual capacity claim against Dart. Individual liability under Section 1983 requires a defendant's personal involvement in the alleged constitutional violation. *See Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015); *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996). As such, allegations must demonstrate that a defendant was "personally involved in the particular deprivation alleged or that the deprivation occurred at the defendant's direction or with the defendant's knowledge and consent." *Neely v. Randel*, 2013 WL 3321451, at *3 (N.D. Ill. June 29, 2013). As explained above, Brown's claim of a constitutional violation involving the application of excessive shackling is premised upon and evaluated by his particular circumstances, specifically his critical health condition and the conditions under which he was restrained. *See supra* at 12–14. Brown has not plausibly alleged that Dart was aware of any of his particular conditions, and therefore has failed to state a claim against Dart in his individual capacity. *See Cullom*, 2020 WL 7698366, at *4

15

(dismissing nearly identical claim against Dart in his individual capacity because the plaintiff had not alleged that Dart was aware of his severe health conditions or the circumstances under which he was being restrained).

In sum, the Court denies Defendants' motion to dismiss as to the shackling claim against Dart in his official capacity but grants the motion to dismiss as to the shackling claim against Dart in his individual capacity. The dismissal of the individual capacity claim is with prejudice, as Brown neither suggests how he might cure the defects nor requests leave to amend in the event of dismissal. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in . . . dismissing a complaint with prejudice . . . when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint.").

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss [10] is granted in part and denied in part. Specifically, the Court dismisses with prejudice Brown's shackling claim against Dart in his individual capacity but otherwise denies Defendants'

motion to dismiss.[7] Defendants are instructed to answer the Complaint by October 25, 2021. The parties are instructed to file a joint status report on or before November 5, 2021.

                                                 Franklin U. Valderrama
                                                 United States District Judge

Dated: September 25, 2021

---

[7] As referenced above, Defendants filed nearly identical motions to dismiss challenging nearly identical complaints in *Gama*, 2020 WL 6802030, at *4 and *Cullom*, 2020 WL 7698366, at *4, and the district judges in both cases permitted the Cook County and Dart official capacity claims to proceed but dismissed the Dart individual capacity claims. While this Court is, of course, not bound by the decision in another district court case, the Court finds the reasoning in these cases to be sound and persuasive. *See Townsel v. DISH Network L.L.C.,* 668 F.3d 967, 970 (7th Cir. 2012) ("[D]istrict courts' decisions are not authoritative, even in the rendering district (other district judges may disagree).").

17